IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JIM T. GLOVER, JR., | ) CASE NO. 1:18 CV 1134 |
| Plaintiff, | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| CORPORAL BOARDMAN, et. al., | ) |
| Defendants. | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |

## I. Introduction

*Pro se* Plaintiff Jim T. Glover, Jr. ("Glover" or "Plaintiff") filed a Complaint (Docket #1), and an "Affidavit of Truth" in support (Docket #1-1), pursuant to 42 U.S.C. § 1983 against seven defendants: Corporal Boardman ("Boardman"), Brian Hennessey (mail room worker) ("Hennessey"), Nurse LaGracia ("LaGracia"), Doctor Kopeblent ("Kopeblent"), Correctional Officer Irion ("Irion"), Dr. Tallman ("Tallman"), and Officer Neice ("Neice") (collectively, "Defendants"). Glover alleges that, at all relevant times herein, he was a pretrial detainee at the Cuyahoga County Correctional Center ("CCCC") and subjected to cruel and unusual punishment by Defendants in violation of his Eighth Amendment constitutional rights. Glover's claims of cruel and unusual punishment are wide ranging, including allegations of excessive force and

denial of medical care and deprivation of food.[1] Plaintiff seeks money damages (Docket #1 at 5) and to be housed at another correctional facility (Docket #1-1 at 8). For the reasons that follow, this case is dismissed in part.

## II. Discussion

### A. Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982), federal district courts are expressly required under 28 U.S.C. § 1915(e)(2) to screen all *in forma pauperis* actions and to dismiss before service any such action that the Court determines is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. In order to survive scrutiny under 28 U.S.C. § 1915(e)(2)(B), a *pro se* complaint must set forth sufficient factual matter, accepted as true, to state claim for relief that is plausible on its face. *See Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (holding that the Fed. R. Civ. P. 12(b)(6) dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) governs dismissals under § 1915(e)(2)(B)). The factual allegations in the pleading "must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

"A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The Court will, therefore, consider Plaintiff's Affidavit of

---

[1] A number of Plaintiff's allegations are asserted against individuals at CCCC not named as defendants in the Complaint. To the extent that Glover asserts a § 1983 claim against unnamed defendants, those claims are subject to dismissal. But even were the Court to consider those claims because the individuals could be added as defendants in an amended complaint, the allegations would still be subject to dismissal for failure to state a § 1983 claim upon which relief could be granted for the reasons discussed herein.

Truth attached to the Complaint when assessing the sufficiency of his claims. *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 292 (6th Cir. 2015) ("The federal rules treat [exhibits attached to the complaint] as part of the pleadings.").

### B. 42 U.S.C. § 1983 Claim for Cruel and Unusual Punishment

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting 'under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory.'" *Gomez v. Toledo*, 446 U.S. 635, 638 (1980) (quoting 42 U.S.C. § 1983). Section 1983 actions may be brought against state actors in their individual or official capacities, and Plaintiff sues Defendants in both.[2]

Glover alleges that Defendants violated his constitutional right as a pretrial detainee to be free from cruel and unusual punishment.[3] "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Baker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Eighth Amendment requires that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

---

[2] An official capacity damages action against a county employee is the equivalent of an action against the public entity he or she serves. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Plaintiff does not address each defendant's employment status, but the Court will assume for the purpose of this analysis that Defendants are employees of Cuyahoga County.

[3] Pretrial detainee cruel and unusual punishment claims sound in the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (abrogated on other grounds by *Graham v. Connor*, 490 U.S. 386 (1989)), but are analyzed under the same rubric as Eighth Amendment claims brought by prisoners. *See Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

Eighth Amendment claims take different forms, and what is necessary to show sufficient harm to establish cruel and unusual punishment under the Eighth Amendment depends upon the nature of Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992). Whatever form the claim takes, punishment that is "incompatible with the evolving standards of decency that mark the progress of a maturing society" or involves "the unnecessary and wanton infliction of pain" are "repugnant to the Eighth Amendment." *Id.* at 10-11 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)). Eighth Amendment claims consist of an objective and subjective component. The objective component of an Eighth Amendment claim is contextual and responsive to "contemporary standards of decency," and must be objectively "harmful enough" to establish a constitutional violation. *Id.* at 8-9 (citing *Estelle*, 429 U.S. at 103 and *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue[.]" *Id.* at 8. The subjective component considers whether the government official acted with "a sufficiently culpable state of mind." *Id.* (quoting *Wilson*, 501 U.S. at 298).

### 1. Plaintiff's claims regarding medical care

In the context of an Eighth Amendment claim for denial of medical care, a plaintiff satisfies the objective component of an Eighth Amendment claim by showing evidence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 834). In order to satisfy the subjective component, a plaintiff must show that the defendant was aware of facts from which the inference could be drawn that plaintiff had a serious medical need, and actually drew that inference, but disregarded it. *Id.* at 895-96 (citing *Farmer*, 522 U.S. at 837). When a defendant provides some medical care

– even when that care is careless or inefficacious – the defendant has not displayed deliberate indifference to an inmate's serious medical need. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Medical negligence does not become a constitutional violation simply because the patient is a prisoner. *See id.*

### *Plaintiff's claim concerning chest pain*

Glover alleges that on February 3, 2018, he experienced chest pain and requested medical care through the on-duty correctional officer. Glover claims that a correctional officer called the infirmary and the nurse came about an hour later, checked his vital signs, and told him that his blood pressure was 130 and his heart rate was abnormal. Plaintiff alleges that the nurse told the on-duty officer to take Plaintiff to the infirmary for observation, but he was not taken. Plaintiff maintains that he was not taken to the infirmary because the infirmary staff has a "personal vendetta" against him. (Docket #1-1 at 5.) On February 4, 2018, Plaintiff claims that he again had chest pain and the nurse checked his blood pressure, which measured 138, and told him that was normal. Plaintiff states that he was taken to the infirmary, given an EKG, and scheduled to see a doctor the next day. (*Id.* at 6.)

Plaintiff does not identify any particular Defendant or individual responsible for the alleged response to his claims of chest pain. Rather, he avers that "CCCC is refusing me medical care." (Docket #1-1 at 5.) Neither CCCC nor its medical department are "persons" subject to suit under § 1983. *Hay v. Cuyahoga Cty. Jail Med. Dep't*, No. 1:11 CV 2652, 2012 WL 262582, at *2 (N.D. Ohio Jan. 27, 2012) (collecting cases). In order to establish a § 1983 claim, Plaintiff must show that the alleged violation of his constitutional right to adequate medical care was committed *personally* by a named Defendant. *See Robertson v. Lucas*, 753 F.3d 606, 615 (6th

Cir. 2014) (quoting *Iqbal,* 556 U.S. at 676); *Heyerman v. Cty. of Calhoun,* 680 F.3d 642, 647 (6th Cir. 2012) (persons sued in their individual capacities under § 1983 are liable only for their own unconstitutional behavior) (citations omitted).

Even liberally construing the Complaint, Plaintiff's chest pain claim is subject to dismissal because he does not identify which, if any, of the Defendants were personally involved in and/or responsible for the alleged constitutional violation. *See Frazier v. Michigan,* 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of § 1983 claim under 28 U.S.C. §§ 1915(e) and 1915(A) for failure to state a (ADA) claim against defendants in their individual capacity where plaintiff does not allege which of the named defendants were personally responsible for each claimed violation of plaintiff's federal rights).

But even if Plaintiff had identified the particular Defendants or individuals who engaged in the alleged unconstitutional conduct, Plaintiff still fails to state an Eighth Amendment claim for deliberate indifference to a serious medical need. Where, as alleged here, a prisoner has received some medical attention, federal courts are generally reluctant to second guess medical judgments or constitutionalize claims which sound in state tort law. *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976). Medical negligence claims are not cognizable under § 1983. *Darrah v. Krisher,* 865 F.3d 361, 372 (6th Cir. 2017) (citing among authority *Estelle,* 429 U.S. at 107).

For these reasons, Plaintiff fails to state an Eighth Amendment claim for deliberate indifference to a serious medical need relative to the medical care he received for chest pain on February 3 and 4, 2018, and this claim is dismissed pursuant to § 1915(e)(2)(B).

### *Plaintiff's claim concerning mental breakdown*

Plaintiff claims that on January 25, 2018, he was having a "mental breakdown" and asked defendant Neice to speak with a mental health specialist. Glover alleges that "they" refused mental health services. The next day, Plaintiff claims that he told the correctional officer on duty and Corporal Ketivich ("Ketivich") that he was having a mental health crisis and requested to speak with a mental health specialist. Ketivich, who is not a named defendant, allegedly responded: "Nobody care[s] about you or what you are going through. [We're] not taking you down to mental health." (Docket #1-1 at 11.) Plaintiff claims that he made the same request to the correctional officer on duty January 27, 2018, but provides no information concerning the unnamed officer's response.

Glover states in conclusory fashion that he was having a mental breakdown. He fails to allege, however, facts that evince a "serious medical need." Even if the Court assumed for the purpose of this analysis that the objective component of a deliberate indifference claim was satisfied here, Plaintiff fails to allege facts which, if true, show that Ketivich, Neice, and the unnamed correctional officer were aware of those facts and drew the inference that Plaintiff had a serious medical need. *See Farmer*, 511 U.S. at 837. Plaintiff fails to state a claim upon which relief can be granted of deliberate indifference to his alleged mental health crisis, and this claim is dismissed pursuant to § 1915(e)(2)(B).[4]

---

[4] Glover names Dr. Kopeblent, a mental health doctor at CCC, as a defendant in the complaint (*see* Docket #1 at 3), but asserts no claim. Kopeblent is dismissed from this action.

### 2. Plaintiff's claim regarding deprivation of breakfast

Glover alleges that on the morning of January 27, 2018, other prisoners were served cereal and milk, while Ketivich served him "old stiff oatmeal" that someone had poked their finger in and a half-peeled boiled egg. Plaintiff claims that he did not receive a "special diet tray" and complained to Ketivich, who responded with the "wildly aggressive" words – "that what you get" – and directed Neice to dump Plaintiff's food tray into the trash. Glover alleges that the deprivation of his breakfast constitutes cruel and unusual punishment, and that Ketivich was retaliating against him because Plaintiff had filed a lawsuit against Ketivich's staff in 2008. (Docket #1-1 at 9.)

Plaintiff's allegation of constitutional violations with respect to breakfast as asserted against Ketivich (who is not a defendant) and Neice, fails to state a claim upon which relief can be granted. Being deprived of a single meal does not rise to the level of an Eighth Amendment violation. *See Dellis v. Corr. Corp. of Am.*, 257 F. 3d 508, 511 (6th Cir. 2001) (temporary inconveniences do not demonstrate that a prisoner's conditions of confinement fell below the minimal civilized measures of life's necessities and fail to state an constitutional claim upon which relief can be granted); *see also Marr v. Case*, No. 1:07-CV-823, 2008 WL 191326, at *12 (W.D. Mich. Jan. 18, 2008) (Missing a single meal "does not rise to the level of an Eighth Amendment deprivation.") (citing among authority *Darting v. Farwell*, 138 F. App'x 847, 847-48 (9th Cir. 2005) (deprivation of a single meal does not constitute injury serious enough to support an Eighth Amendment claim); *Williams v. Harness*, No. 99-1326, 2000 WL 573448, at *1 (8th Cir. May 10, 2000) (denial of one meal coupled with verbal harassment do not state Eighth

Amendment violation); *Palmer v. Johnson,* 193 F.3d 346, 352 (5th Cir. 1999) (missing one meal does not rise to the level of a cognizable constitutional injury)).

Plaintiff fails to state a claim for cruel and unusual punishment relative to his alleged deprivation of breakfast, and this claim is dismissed pursuant to § 1915(e)(2)(B).

### 3. Plaintiff's claims regarding verbal abuse, harassment, and threats by CCCC officers

*Officers Bart and Neice*

Plaintiff alleges that he was verbally harassed, intimidated, and disrespected by CCCC officers. For example, Plaintiff claims that on December 9, 2017,[5] Officer Bart ("Bart"), who is not a defendant in this action, attempted to intimidate him by saying "don't even look at me, look the other way" in a threatening and aggressive manner "for no apparent reason." Plaintiff claims that Bart repeated this statement on January 1, 2018 while another officer searched his cell. (Docket #1-1 at 1.)

Glover further claims that on January 18, 2018, Neice whispered to him that "you ain't nothing but a soft-ass NIGGER." (*Id.* at 2 (emphasis in original).) Glover also claims that on an unidentified date, "stated officer" told Plaintiff that the officer "will beat the shit out of you," allegedly in retaliation for Plaintiff informing the "stated officer's" supervisor about the harassment. (*Id.*)

Glover's factual allegations regarding abusive language fail to state a claim upon which relief can be granted. Verbal abuse and harassment, including derogatory language and racial

---

[5] Plaintiff claims the date is December 9, 2018, but it appears that 2018 is an error because the Complaint was filed before that date. (Docket #1-1 at 1.)

epithets, does not constitute the type of pain and punishment that supports an Eighth Amendment claim. *See Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (verbal threats do not create a constitutional violation) (citation omitted); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6 th Cir. 2007) (state prison guard's use of racial slurs and derogatory language does not rise to the level of an Eighth Amendment violation); *see also Blevins v. Naeyaert*, No. 2:17-CV-185, 2018 WL 1804573, at *2 (W.D. Mich. Apr. 17, 2018) (same) (collecting cases).

Glover fails to state a claim against Neice and Bart upon which relief can be granted, and those claims are dismissed pursuant to § 1915(e)(2)(B).[6]

### *Officer Robinson*

Glover claims that Robinson threatened Plaintiff's life on December 2, 2017, and told Plaintiff that he was planning Plaintiff's assassination. (Docket #1-1 at 8.) Plaintiff alleges that he fears for his life at CCCC, and asks this Court to be housed at a different facility.

While verbal abuse and harassment generally do not establish a cognizable § 1983 claim, verbal threats may state a constitutional claim if the resulting harm were sufficiently severe. *See McIntyre v. Quezevue*, No. 3:11-CV-00128, 2011 WL 2433714, at *2 (M.D. Tenn. June 13, 2011) (verbal threats by parole officer or prison guard of serious physical injury, such as death, may satisfy the "malicious and sadistic" Eighth Amendment standard and violate an inmate's constitutional rights) (citations omitted); *Marsh v. Price*, No. CIV.A. 05-CV-277-JMH, 2005 WL 3118121, at *9 (E.D. Ky. Nov. 21, 2005) ("Only if the comments approached being threats of terror of instant and unexpected death would the plaintiff possibly state a violation.") (citing

---

[6] Plaintiff does not claim, or allege facts from which the Court could infer, that the alleged racial slur supports an equal protection claim. *See King v. City of Eastpointe*, 86 F. App'x 790, 814 (6th Cir. 2003) (citations omitted).

*Burton v. Livingston,* 791 F.2d 97, 100 (8th Cir. 1986) (guard drew weapon and threatened to shoot prisoner in the back to prevent him from exercising his free speech rights) and *Douglas v. Marino,* 684 F. Supp. 395, 398 (D. N.J. 1988) (prison employee brandished a knife and threatened to stab prisoner)); *cf. Collins v. Cundy,* 603 F.2d 825 (10th Cir. 1979) (Sheriff's idle threat to hang a prisoner does not give rise to a § 1983 claim).

Glover does not allege that Robinson brandished a weapon or threatened him with instant and unexpected death. *Marsh,* 2005 WL 3118121, at *9. Even liberally construing the Complaint, the Court finds that Robinson's threat does not satisfy the malicious and sadistic standard necessary to find a violation of Plaintiff's constitutional rights. *See McIntyre,* 2011 WL 2433714, at *2. Accordingly, Plaintiff fails to state a claim upon which relief can be granted, and his claim against Robinson is dismissed pursuant to § 1915(e)(2)(B).

### 4. Plaintiff's claims of retaliation

Woven through the Complaint are claims that the alleged unconstitutional conduct has its roots in retaliation, including retaliation for prior lawsuits filed by Plaintiff (*see* Docket #1-1 at 9), or complaints made by Plaintiff to a defendant's supervisor (*see id.* at 2). Glover generally avers that he is "surrounded by his enemies" who have the power to retaliate against him contrary to CCCC policy (*see id.* at 4), and alleges a conspiracy to retaliate against him and make his stay at CCCC "miserable" (*see id.* at 10).

Glover's claims of retaliation are conclusory and speculative. He sets forth no facts which, if believed, actually support his contention that Defendants' conduct – or the conduct of any individual at CCCC – was motivated by retaliation. *See Wingo,* 499 F. App'x at 455 (plaintiff's conclusory claim that his cell was searched in retaliation without supporting facts fails

to state a claim) (citing *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999)). Glover fails to state a plausible claim for retaliation upon which relief can be granted and, to the extent that he asserts a § 1983 claim for retaliation, those claims are dismissed pursuant to § 1915(e)(2)(B).

### 5. Plaintiff's claims of lack of supervision

Also woven through the Complaint are conclusory generic allegations of "lack of supervision" or "inappropriate supervision." (*See e.g.* Docket #1-1 at 2, 4, 9.) But government officials are not liable under § 1983 for the conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal,* 556 U.S. at 676, *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). Any § 1983 liability of a supervisor must be based upon his own unconstitutional conduct. *See Iqbal,* 556 U.S. at 676; *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (a supervisor is not liable for a subordinate's conduct unless it is shown that the supervisor encouraged the specific incident of alleged misconduct or in some other way directly participated in it).

Here, Plaintiff makes no factual allegations that would support even an inference that any "supervisor" directed or participated in the alleged misconduct. Plaintiff's mere allegation of "lack of supervision" or "inappropriate supervision," without any factual allegation in support that the supervisor encouraged the specific misconduct or participated in it, is insufficient to establish liability under § 1983. Accordingly, to the extent that Plaintiff asserts a § 1983 claim for failure to supervise, he fails to state a plausible claim upon which relief can be granted and that claim is dismissed pursuant to § 1915(e)(2)(B).

### 6. Plaintiff's claim of threats by fellow inmate

Plaintiff claims that he was threatened by another inmate. Specifically, Plaintiff alleges that an unnamed inmate threw an orange at his cell from across the range, charged his cell where Plaintiff was locked down inside, punched the cell window, spit through the crack of the door hinge, and threatened to kill him. (Docket #1-1 at 3.) Plaintiff complains that after this incident, he was punished by restriction to his cell, but the unnamed inmate was not so punished because the unnamed inmate is friends with defendants Blivenns and Riveara, who are not named defendants in this action. (*Id.*) Glover claims that the next day, the unnamed inmate repeated his threats of harm, and Blivenns called Plaintiff a "BITCH-ass dude." (*Id.* at 4 (emphasis in original).)

For the reasons discussed above, Blivenns' verbal insult does not constitute an Eighth Amendment violation. With respect to the unnamed inmate, it is unclear whether Plaintiff is claiming an equal protection violation because, although he was allegedly guiltless in the incident Plaintiff was punished but the unnamed inmate was not, or whether Plaintiff is claiming that Blivenns and Riveara failed to protect him from the unnamed inmate. Either way, Plaintiff fails to state a claim.

Glover has not pled, nor adequately alleged, a Fourteenth Amendment equal protection violation because, as a threshold matter, he does not identify the inmate or allege that he was similarly situated to the unnamed prisoner whom he claims was treated more favorably than he was. *Hensley v. Blount Cty. Jail*, No. 3:15-CV-00019, 2018 WL 1324138, at *6 (E.D. Tenn. Mar. 14, 2018) (citing *Taylor Acquisitions, L.L.C., v. City of Taylor*, 313 F. App'x 826, 836 (2009) (to satisfy the threshold inquiry in an equal protection claim, plaintiff must allege that he and the

individuals who were treated differently were similarly situated in all material respects). Moreover, there is only one allegation in the Complaint concerning purported unequal treatment, and minor and isolated instances of differing treatment among prison inmates is insufficient to support an equal protection claim. *See Gadson v. Fuson*, No. 3:13-1050, 2014 WL 1631002, at *3 (M.D. Tenn. Apr. 24, 2014) (collecting cases); *see also Bloodworth v. Timmerman-Cooper*, No. 2:10-CV-1121, 2012 WL 161232, at *3 (S.D. Ohio Jan. 19, 2012) (plaintiff does not allege an equal protection violation by simply claiming that other inmates who committed greater disciplinary offenses were treated more favorably where plaintiff does not provide the names of the inmates or sufficient information to show they were similarly situated to him) (citations omitted), *report and recommendation adopted,* No. 2:10-CV-1121, 2012 WL 469841 (S.D. Ohio Feb. 13, 2012).

To the extent that Glover alleges a "failure to protect" claim under the Eighth Amendment, that claim also fails. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. To establish a violation of this right, a plaintiff must show that the defendant was deliberately indifferent to the plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cty. of Medina, Ohio*, 29 F.3d 238, 243 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged constitutional violation and inmate violence to "justify a reasonable fear for personal safety") (citation omitted).

Here, Glover fails to allege facts from which this Court can infer that Glover reasonably feared an attack from the unnamed inmate. *Cf. Forbes v. Mich.*, No. 1:10-CV-830, 2010 WL 3609233, at *4 (W.D. Mich. Sept. 9, 2010) (plaintiff previously attacked by another inmate reasonably feared another attack when the inmate subsequently threatened to harm plaintiff again); *Belser v. Woods*, No. 2:16-CV-134, 2016 WL 6975936, at *8 (W.D. Mich. Nov. 29, 2016) (allegation that defendants provided information to plaintiff's bunkmate that made plaintiff a target but failed to protect him is not a frivolous claim). Accordingly, Plaintiff fails to state a claim upon which relief can be granted and this claim is dismissed pursuant to § 1915(e)(2)(B).

### 7. Plaintiff's excessive force claim

Glover alleges that on December 26, 2017, he was attacked by Boardman and Irion. On that date, Plaintiff was on suicide watch and naked in his cell. (Docket #1-1 at 7.) Glover claims that Boardman and Irion entered his cell to deliver his morning meal.[7] Plaintiff claims that he received a "segregation tray" and "politely informed" Boardman that he was not in segregation, but accepted the tray. (*Id.*) According to the Complaint, after Plaintiff accepted the tray, Boardman pepper sprayed the side of his face and Plaintiff ran to the back of his cell. (*Id.*) Plaintiff alleges that Boardman and Irion began to strike the back of his head and back although he "was not resisting or anything," and Boardman pepper-sprayed the back of his head and neck. (*Id.*) Glover states that he then felt a "hand part one of my butt cheeks and pepper foam my anus and testicles. The pain was so much I almost passed out from initial contact. The assault lasted another minute." (*Id.* at 7-8.) Plaintiff claims that when Boardman and Irion heard other officers arriving, they handcuffed Plaintiff and placed him in a restraint chair.

---

[7] Glover states that "Christy" – who is not named as a defendant – was also present, but does not assert that Christy participated in the alleged attack (see Docket # 1 at 5).

-15-

Glover states that he complained of the assault to Corporal Lacatta, who told him "who are they going to believe, you or [a] corporal." And he also informed the jail investigator, Mr. Hudson, about the assault, who told him to wait and see what happened with his internal complaint regarding the assault. (Docket #1-1 at 8.) Plaintiff claims that he never heard back from Warden Ivy or the Sheriff regarding his complaint concerning the assault.[8] (Docket #1 at 7; Docket #1-1 at 8.)[9]

In order to analyze an "excessive force" claim under the Eighth Amendment, the Court must determine "whether the force was applied in a good-faith to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. 312 (1986)). Although prison officials may often be required to use physical contact to ensure prison security, they can violate the Eighth Amendment if the contact represents an "unnecessary and wanton infliction of pain." *See Estelle*, 429 U.S. at 103. Assuming the truth of Glover's

---

[8] To the extent that Plaintiff is asserting a § 1983 claim against Warden Ivy or the Sheriff (neither of which are named as defendants in this action) for failing to respond to his grievance, he fails to state a § 1983 claim. *See Proctor v. Applegate*, 661 F. Supp. 2d 743, 755 (E.D. Mich. 2009) ("[A] prison official's failure to respond to a prisoner's letter or grievance does not state a constitutional claim. A prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure." ) (citing among authority *Lee v. Mich. Parole Bd.*, 104 F. App'x. 490, 493 (6th Cir. 2004) ( "Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.")).

[9] With respect to his injuries, Glover alleges that Dr. Tallman took him off of the list to be seen by a doctor for his injuries, but he also alleges that received one physical therapy session for his injuries. Plaintiff also claims that he was denied mental health treatment with respect to the alleged sexual assault but provides no specifics, and it is unclear whether this mental health care allegation is the same incident addressed, *supra*. Glover states that he is in constant physical pain and is suffering from depression. (Docket #1-1 at 8.) Plaintiff fails to allege a constitutional violation for deliberate indifference to a serious medical need with respect to physical care for his injuries and mental health care. He does not allege facts, beyond conclusory statements, to support the objective component (serious medical need) of a deliberate indifference claim. And Plaintiff fails to allege any facts to support the subjective component (that Tallman (or any doctor) was both aware of and drew the inference that Plaintiff had a serious medical need) but was deliberately indifferent to that need. Thus, Plaintiff fails to state a claim upon which relief can be granted regarding his physical injuries and regarding mental health care, and these claims are dismissed pursuant to § 1915(e)(2)(B). *See Farmer*, 511 U.S. at 837.

allegations, Plaintiff may present a claim for "excessive force" under the Eighth Amendment, and the Court declines to dismiss this claim at the § 1915 screening stage.

### 8. Plaintiff's official capacity claims

Glover's official capacity claims against Defendants are equivalent to claims against Cuyahoga County. An official capacity claim for damages "'generally represents only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell,* 436 U.S. at 690 n. 55). To state a § 1983 claim against Cuyahoga County, Plaintiff must allege that the claimed violation of his constitutional rights was caused by an unconstitutional policy, ordinance, regulation or decision officially adopted and promulgated by the County. *Monell*, 436 U.S. at 690; *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166). Glover alleges no facts upon which this Court could infer that a policy, ordinance, regulation, or officially adopted decision of Cuyahoga County played a role in the claimed violation of his constitutional rights. Accordingly, Plaintiff fails to state an official capacity claim against Defendants, and those claims are dismissed pursuant to § 1915(e)(2)(B).

### 9. Miscellaneous claims

#### *Defendant Hennessey*

Plaintiff identifies Hennessey as a mail room worker. The only allegation in the Complaint against Hennessey is that he violated federal mail rules "by not sending any mail to be mailed." (Docket #1 at 4.) "While prisoners have a 'First Amendment right to send mail,' *Rodgers v. Hawley,* 2001 WL 798618, at *2 (6th Cir. June 22, 2001), 'random and isolated interference' with a prisoner's mail does 'not violate his constitutional rights.' *Johnson v. Wilkinson,* 2000 WL 1175519, at * 2 (6th Cir. Aug. 11, 2000)." *Jones v. Hall*, No. 3:12-CV-

allegations, Plaintiff may present a claim for "excessive force" under the Eighth Amendment, and the Court declines to dismiss this claim at the § 1915 screening stage.

### 8. Plaintiff's official capacity claims

Glover's official capacity claims against Defendants are equivalent to claims against Cuyahoga County. An official capacity claim for damages "'generally represents only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell,* 436 U.S. at 690 n. 55). To state a § 1983 claim against Cuyahoga County, Plaintiff must allege that the claimed violation of his constitutional rights was caused by an unconstitutional policy, ordinance, regulation or decision officially adopted and promulgated by the County. *Monell*, 436 U.S. at 690; *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166). Glover alleges no facts upon which this Court could infer that a policy, ordinance, regulation, or officially adopted decision of Cuyahoga County played a role in the claimed violation of his constitutional rights. Accordingly, Plaintiff fails to state an official capacity claim against Defendants, and those claims are dismissed pursuant to § 1915(e)(2)(B).

### 9. Miscellaneous claims

#### *Defendant Hennessey*

Plaintiff identifies Hennessey as a mail room worker. The only allegation in the Complaint against Hennessey is that he violated federal mail rules "by not sending any mail to be mailed." (Docket #1 at 4.) "While prisoners have a 'First Amendment right to send mail,' *Rodgers v. Hawley,* 2001 WL 798618, at *2 (6th Cir. June 22, 2001), 'random and isolated interference' with a prisoner's mail does 'not violate his constitutional rights.' *Johnson v. Wilkinson,* 2000 WL 1175519, at * 2 (6th Cir. Aug. 11, 2000)." *Jones v. Hall*, No. 3:12-CV-

allegations, Plaintiff may present a claim for "excessive force" under the Eighth Amendment, and the Court declines to dismiss this claim at the § 1915 screening stage.

### 8. Plaintiff's official capacity claims

Glover's official capacity claims against Defendants are equivalent to claims against Cuyahoga County. An official capacity claim for damages "'generally represents only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell,* 436 U.S. at 690 n. 55). To state a § 1983 claim against Cuyahoga County, Plaintiff must allege that the claimed violation of his constitutional rights was caused by an unconstitutional policy, ordinance, regulation or decision officially adopted and promulgated by the County. *Monell*, 436 U.S. at 690; *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166). Glover alleges no facts upon which this Court could infer that a policy, ordinance, regulation, or officially adopted decision of Cuyahoga County played a role in the claimed violation of his constitutional rights. Accordingly, Plaintiff fails to state an official capacity claim against Defendants, and those claims are dismissed pursuant to § 1915(e)(2)(B).

### 9. Miscellaneous claims

#### *Defendant Hennessey*

Plaintiff identifies Hennessey as a mail room worker. The only allegation in the Complaint against Hennessey is that he violated federal mail rules "by not sending any mail to be mailed." (Docket #1 at 4.) "While prisoners have a 'First Amendment right to send mail,' *Rodgers v. Hawley,* 2001 WL 798618, at *2 (6th Cir. June 22, 2001), 'random and isolated interference' with a prisoner's mail does 'not violate his constitutional rights.' *Johnson v. Wilkinson,* 2000 WL 1175519, at * 2 (6th Cir. Aug. 11, 2000)." *Jones v. Hall*, No. 3:12-CV-

00918, 2012 WL 4060084, at *2 (M.D. Tenn. Sept. 14, 2012); *Flores v. Leece*, No. 2:17-CV-61, 2017 WL 4639957, at *6 (W.D. Mich. Oct. 17, 2017) (same) (citations omitted).

Plaintiff's single conclusory allegation against Hennessey regarding outgoing mail is insufficient to state a § 1983 claim upon which relief can be granted and is dismissed pursuant to § 1915(e)(2)(B).

### *Nurse LaGracia*

Plaintiff alleges that LaGracia is a registered nurse at CCCC. According to the complaint, LaGracia "used mental health as punishment" (*see* Docket #1 at 4) and instructed correctional officers to take his matt when he was on suicide watch (*see* Docket #1-1 at 7). These threadbare allegations are insufficient to establish a plausible claim for constitutional violations. Accordingly, Glover fails to state a § 1983 claim against LaGracia upon which relief can be granted, and is dismissed pursuant to § 1915(e)(2)(B). *See Iqbal*, 556 U.S. at 678.

### *2012 incident*

Glover alleges that in 2012, he was pepper-sprayed and beaten by Blivenns, Corporal Losata, and S.R.T. Bitterman, none of whom are named defendants in this case. (See Docket #1-1 at 4.) It is unclear whether Plaintiff is asserting a § 1983 claim with respect to this incident, or providing background information. To the extent he is asserting a § 1983 claim, that claim is dismissed because the 2012 incident is barred by the two-year statute of limitations that applies to § 1983 claims in Ohio. *See Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citation omitted); *see also McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988) (The limitations period begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of his action.") (citation omitted).

## III. Conclusion

For the reasons stated herein, all of Plaintiff's § 1983 claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted, **except** for Plaintiff's excessive force claim against defendants Boardman and Irion.

This case shall proceed only against defendants Corporal Boardman and Correctional Officer Irion and only with respect to the claim listed above. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process upon Corporal Boardman and Correctional Officer Irion, and a copy of this Order shall be included with the documents served.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision may not be taken in good faith.

**IT IS SO ORDERED.**

DONALD C. NUGENT
United States District Judge

DATED: December 21, 2018