IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JIM T. GLOVER, JR.,**<br><br>  Plaintiff,<br>vs.<br><br>**CORPORAL STEVE BOARDMAN, CORRECTIONAL OFFICER PHILIP IRION, JR.,**<br>and<br>**CUYAHOGA COUNTY,**<br><br>  Defendants. | CASE NO. 1:18-cv-01134<br><br>MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR.<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1. This is a civil rights action. On December 26, 2017, Defendant Corporal Steve Boardman and Defendant Correctional Officer Philip Irion, Jr. brutally beat, deployed oleoresin capsicum (OC) spray against, and severely injured Plaintiff Jim T. Glover, Jr. while he was at the Cuyahoga County Corrections Center (CCCC).

2. Defendants' unprovoked and unnecessary actions constituted excessive force against Plaintiff Jim T. Glover, Jr., in violation of his constitutional rights.

3. Defendant Cuyahoga County is also liable for Glover's trauma, injuries, and damages. Cuyahoga County's unconstitutional policies, practices, and customs in place at the time of this incident are the moving force behind the misconduct committed by Defendants Boardman and Irion.

4. Cuyahoga County Corrections Center is operating under a state of constant crisis, endangering the health and safety of Detainees/Inmates and staff alike on a daily basis. CCCC is underfunded, understaffed, poorly administered, and intentionally overcrowded, giving rise to a

1

chaotic and perilous environment inside the jail walls. Detainees and Inmates, including Plaintiff Glover, are subjected to ongoing patterns of unconstitutional conditions of confinement within CCCC, including, *inter alia*, the use of punitive and excessive force in violation of the right to be free from unreasonable seizure pursuant to the Fourth Amendment. Defendants have long been on notice of the horrific conditions and constitutional deprivations occurring daily at CCCC, yet have failed to timely or effectively remedy the deplorable state of affairs.

## JURISDICTION AND VENUE

5. The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States.

6. Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

7. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claim also occurred in this judicial district.

## PARTIES

8. Plaintiff Jim T. Glover Jr., at all times relevant to the allegations made in the Complaint, resided in the City of Cleveland, in Cuyahoga County, Ohio.

9. Defendant Cuyahoga County ("the County") was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law. Defendant Cuyahoga County is a "person" under 42 U.S.C. § 1983. Defendant Cuyahoga County is the employer and principal of Defendants

Boardman and Irion and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center.

10. Defendant Cuyahoga County is responsible for ensuring that all of its facilities, including the Cuyahoga County Corrections Center, are in compliance with federal and state law, department or agency policies, rules, and regulations, and related standards of care.

11. Defendant Corporal Steve Boardman was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Cuyahoga County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

12. Defendant Correctional Officer Philip Irion, Jr. was, at all times relevant to the allegations made in this complaint, a duly-appointed correctional officer employed by Cuyahoga County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

## Facts

### Defendants' Attack on Jim T. Glover, Jr.

13. Jim T. Glover, Jr. is a 38 year-old Black man who was in the custody of CCCC as a pretrial detainee at all times relevant to this complaint.

14. On December 26, 2017, Jim T. Glover, Jr. was being held in CCCC's pod 7C, where he was held naked in a special cell meant to be used for Inmates/Detainees who have expressed suicidal ideation.

15. At approximately 6:30 a.m., Defendant Corporal Steve Boardman and Defendant Correctional Officer Philip Irion, Jr. were serving breakfast to Inmates/Detainees in Pod 7C.

16. During the time that Glover was a pretrial detainee at CCCC, there was a policy/practice of serving different, less nutritional meals to Inmates/Detainees in segregation as a punitive measure against these Inmates/Detainees.

17. Glover was served a punitive breakfast tray.

18. Glover informed Defendant Corporal Boardman that he was not, in fact, in segregation, but instead was on suicide watch—meaning that he should have received a normal meal tray.

19. Despite the oversight, Glover decided to accept the less nutritious meal.

20. Defendant Corporal Boardman—who had his OC spray at the ready— entered Glover's cell and deployed OC spray into Glover's face.

21. Naked and confused, Glover fled Boardman and the OC spray, running to the back of his cell.

22. Boardman and Irion followed Glover further into the cell and began to brutalize him, kicking his head and back.

23. Glover did not pose any threat to Defendants Boardman and Irion.

24. Defendant Corporal Boardman continued to deploy OC spray to the back of Glover's neck.

25. Glover, facing away from Defendants, felt a hand spread his butt cheeks apart.

26. Glover then felt the excruciating pain of OC spray being sprayed directly onto his anus and testicles.

27. During this attack, each Defendant officer had the duty and opportunity to intervene to prevent the use of excessive force against Glover yet did nothing to assist or protect him or to prevent the brutality.

28. At this point, additional correctional officers rushed to the cell.

29. Defendant Corporal Boardman handcuffed Glover while he was on the ground, forced him to his feet, and walked him out of his cell.

30. Defendants Boardman and Irion, along with the several other CCCC correctional officers who responded to Pod 7C, then strapped Glover into an emergency restraint chair.

31. CCCC correctional officers decontaminated Glover from the OC spray deployed by Defendants, but failed to decontaminate him appropriately, which caused pain to Glover while he was inappropriately and punitively restrained for four hours.

32. In the days and weeks after this attack, Glover experienced constant burning on his anus due to Defendants' point-blank deployment of OC spray directly to his anus.

33. Glover also experienced serious mental and emotional repercussions from the attack, continually re-living the terrifying events in his mind.

34. While still at CCCC, Glover submitted two separate written grievances to the Cuyahoga County Sheriff's Office.

35. CCCC employee Phillip Christopher, who was a Sergeant at that time, conducted an investigation on behalf of the Warden's Office and returned a disposition of "unfounded" for all of the claims made in Glover's grievance.

36. Glover sent several written requests for mental health treatment and was never scheduled to receive any mental health treatment.

37. Glover submitted several requests to CCCC medical staff to be evaluated by a doctor and was never seen.

38. After leaving CCCC, Glover continued to experience ongoing back pain, caused by the Defendants' attack.

39. Defendants' actions were without probable cause, unjustified, objectively unreasonable, and constitute deliberate indifference.

40. In violating Glover's Constitutional rights, Defendants Boardman and Irion engaged in willful, wanton, reckless, and/or negligent conduct. Defendants' conduct was the direct, actual, and proximate cause of Glover's injuries.

41. The Defendant officers jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give false, incomplete, and misleading versions of the events to their superiors in order to cover up their misconduct.

42. The actions of the Defendants were taken jointly, in concert, and with shared intent.

43. As a direct and proximate result of Defendants' conduct, Glover sustained physical and psychological injuries, including, *inter alia*, severe pain, fear, injury, humiliation, and disability.

44. The injuries suffered by Glover were all preventable had Defendants not engaged in illegal conduct in violation of Glover's fundamental rights.

**Unconstitutional Conditions at the Cuyahoga County Corrections Center**

45. Defendant Cuyahoga County ("the County") is responsible for the Cuyahoga County Corrections Center (CCCC), including the care and treatment of Detainees/Inmates—like Jim T. Glover, Jr.—in custody therein. The County is required to ensure that the policies, practices, and customs of the CCCC comply with federal and Ohio law concerning the treatment of persons in custody.

46. Unconstitutional and deplorable conditions in the CCCC are a historic problem. Defendant Cuyahoga County has long been on notice of – and have even taken action to worsen – these conditions, and have long been on notice of the incompetent supervision and management of the CCCC.

47. The CCCC has been subjected to federal court monitoring at least twice in response to unconstitutional conditions of confinement within the jail.

48. The County's track record of operating the CCCC demonstrates continued indifference and longstanding, systematically unconstitutional operational procedures.

49. CCCC today operates in complete crisis. Upon information and belief, at least nine people died in CCCC within one year, and over 55 people attempted suicide while in CCCC custody in 2018. The rates of in-custody deaths, assaults by correctional officers, deprivations of basic human rights, and safety of Detainees/Inmates and staff alike have all reached emergency levels.

50. Detainees/Inmates and their families have raised innumerable concerns and complaints about deplorable conditions. Some CCCC staff have quit their jobs in protest. Other stakeholders, including judges in the Cleveland Municipal Court and Cuyahoga Common Pleas Court, have expressed serious concern over jail conditions and the manner in which the facility is being operated.

51. As of November 2017, the Ohio Department of Rehabilitation and Corrections' (ODRC) Bureau of Adult Detention inspection found CCCC was not in compliance with Ohio's Minimum Standards for Adult Detention Centers. (ODRC Bureau of Adult Detention Report attached as Exhibit 1.)

52. Likewise, the Pretrial Justice Institute (PJI) found in 2017 that CCCC was overcrowded. The PJI report found that on average, CCCC has been operating at over 100% capacity for four of the past five years. (See Pretrial Justice Institute, "Enhancing Pretrial Justice in Cuyahoga County: Results from a Jail Population Analysis and Judicial Feedback," September

2017, available at https://university.pretrial.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=c4587ef2-8416-18fe-e19d-b188d3691e93&forceDialog=0.)

53. Further, the Cuyahoga County Bail Task Force found in March 2018 that Inmates/Detainees remain in CCCC custody for unnecessarily long periods of time.

54. The County has long been on notice of overcrowding and medical and mental health issues—since at least 2017—but has not remedied this critical problem and instead has increased overcrowding.

55. Further, the United States Marshals Service (USMS) issued a report on November 21, 2018 condemning the conditions in the CCCC. This report documented numerous failings discovered in USMS's thorough review of conditions, policies, and practices at CCCC. The report concluded that conditions in CCCC are inhumane and dangerous for both Inmates/Detainees and corrections officers. (USMS Report attached as Exhibit 2).

56. The USMS Report findings include, but are not limited to:

   a. Failure to utilize generally-accepted best practices for Use-of-Force teams to ensure staff and Detainee/Inmate safety;

   b. Failure to tag and label as evidence all video tapes involving use-of-force incidents;

   c. Failure to require all persons involved in use-of-force incidents to complete written reports; and

   d. Failure to train annually on safety/security/fire/medical procedures and supervision of offenders.

57. The USMS report found that CCCC is severely overcrowded and identified 96 corrections officer vacancies, indicating severe understaffing. The report states, "as a result of the

high vacancy rate and excessive staff call outs, the CCCCs daily operation is greatly impacted regarding provision for detainees'/inmates' basic needs."

58. Critically, over 100 Detainee/Inmate interviews conducted by the USMS review team revealed "strong and consistent allegations of brutality, use of force punishment, and cruel treatment of the Security Response Team (SRT)," who dress in para-military uniforms.

59. These reports obtained by USMS are consistent with Jim T. Glover, Jr.'s experiences at the hands of the Defendants in this case.

60. The USMS review team also observed SRT officers verbally abusing and aggressively interacting with Detainees/Inmates, and observed aggressive conduct and abusive, explicit language directed at Detainees/Inmates by SRT members.

61. Further, as evidenced in the USMS report and inmates' and detainees' accounts—including Jim T. Glover, Jr.—CCCC was in violation of the Ohio minimum jail standards, as defined in Ohio Admin. Code § 5120:1-8. These violations include, but are not limited to:

   a. Failure to limit use of force to "the amount of force necessary to control a given situation," where "in no event is physical force used as punishment";

   b. Failure to ensure that disciplinary measures do not include corporal punishment or withholding food.

62. Compounding these violations, CCCC's grievance system is broken, leaving Detainees/Inmates—including Jim T. Glover, Jr.—with no functional avenue to seek redress of their serious needs and legitimate complaints concerning conditions of confinement and rights violations, depriving them of due process. Detainees'/Inmates' complaints, kites, and grievances are not delivered and/or go unanswered. Their complaints remain unaddressed, and their suffering continues unabated.

<u>**FIRST CLAIM FOR RELIEF**</u>
**42 U.S.C. § 1983 Claim for Unconstitutional Seizure**
**against Defendants Boardman and Irion**

63. All of the foregoing paragraphs are incorporated as though fully set forth here.

64. The actions of Defendants Boardman and Irion, as alleged in the preceding paragraphs, violated Jim T. Glover, Jr.'s rights under the Fourth to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

65. Glover was subjected to the use of excessive force in violation of his Fourth Amendment and Fourteenth Amendment rights.

66. The Defendant officers acted unreasonably and with deliberate indifference to the rights and safety of Glover.

67. Defendants further had the duty and opportunity to intervene to protect Glover and to prevent the use of excessive force against him, yet they did nothing to assist him or prevent the brutality meted out by fellow officers.

68. Defendants' conduct during and after this attack constitutes cruel and unusual punishment in violation of Glover's constitutional rights.

69. Defendants' actions as alleged in this count of the complaint were the direct and proximate cause of the constitutional violations set forth above and of Glover's injuries.

70. Defendants are jointly and severally liable for this conduct.

<u>**SECOND CLAIM FOR RELIEF**</u>
**42 U.S.C. § 1983 *Monell* Claim**
**against Defendant Cuyahoga County**

71. All of the foregoing paragraphs are incorporated as though fully set forth here.

10

72. The actions of the individual Defendants, as alleged above, were taken pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of Defendant Cuyahoga County.

73. Defendant Cuyahoga County, at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently are directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

74. Despite the facts and circumstances surrounding these uses of force which clearly demonstrate that the actions of the individual Defendants were unreasonable and unlawful, upon information and belief, Cuyahoga County has failed to effectively investigate or impose any discipline on the individual Defendants for their illegal behavior.

75. At all times relevant, the Defendant Cuyahoga County and its CCCC had interrelated de facto policies, practices, and customs which included, *inter alia*:

   a. the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their correctional officers who engage in unjustified use of excessive and/or unreasonable force;

   b. the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs for use of force against inmates/detainees;

   c. the failure to properly investigate the use of excessive and unreasonable force against CCCC inmates/detainees;

   d. the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their correctional officers who engage in unjustified use of excessive and/or unreasonable force via use of restraint chairs;

   e. the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs for use of restraint chairs against inmates/detainees;

    f.   the failure to properly investigate the use of excessive and unreasonable force via restraint chair use against CCCC inmates/detainees;

    g.   the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their correctional officers who engage in threats or retaliation against inmates/detainees;

    h.   the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs concerning correctional officer threats and retaliation against inmates/detainees;

    i.   the failure to properly investigate correctional officer threats and retaliation against CCCC inmates/detainees;

    j.   the code of silence.

76. The aforementioned de facto policies, practices, and customs of Cuyahoga County include acts of excessive use of force, punitive use of restraint chairs, retaliation, and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

77. Cuyahoga County has engaged in little or no meaningful investigation or disciplinary action in response to the misconduct of its correctional officers, thereby creating a culture or climate where CCCC correctional staff can escape accountability for their acts of misconduct with impunity.

78. These municipal Defendants were the moving force behind the conduct of the individual Defendants in brutalizing Jim T. Glover, Jr.

79. The policy, practice, and custom of a code of silence results in correctional officers refusing to report instances of misconduct of which they are aware, including unlawful seizures, despite their obligation under jail regulations to do so, and also includes correctional officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they or their fellow officers have engaged in misconduct.

80. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control correctional officer misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize correctional officers from discipline.

81. That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread CCCC policy, practice, and custom is further established by the involvement in, and ratification of, these acts by supervisors and County policymakers, as well as by a wide range of other officials, officers, and divisions of the CCCC.

82. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Jim T. Glover, Jr. because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

83. But for the belief that they would be protected—both by fellow officers and by Cuyahoga County—from serious consequences, the Defendants would not have engaged in the conduct that resulted in the injuries to Jim T. Glover, Jr.

84. The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the individual Defendants to commit the acts against Glover alleged in this complaint.

85. Cuyahoga County therefore acted as the moving force behind and the direct and proximate causes of the violations of Jim T. Glover, Jr.'s constitutional rights and all injuries and damages suffered by him.

**PRAYER FOR RELIEF**

Plaintiff demands that judgment be entered in his favor on all counts and prays the Court to award the following relief:

a. An award of actual and/or compensatory damages against all Defendants in an amount to be determined at trial that will fully and fairly compensate Jim T. Glover, Jr. for the injuries and damages he suffered;

b. An award of punitive damages against Defendants Boardman and Irion in an amount to be determined at trial that will serve to adequately punish and deter the acts and omissions alleged in this complaint;

c. An award of attorneys' fees and the costs of this action pursuant to 42 U.S.C. Section 1988; and

d. All such other relief to which Plaintiff is entitled and/or this Court deems equitable.

***TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.***

/s/ Sarah Gelsomino
Sarah Gelsomino (0084340)
Marcus Sidoti (0077476)
FRIEDMAN, GILBERT + GERHARDSTEIN
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com
marcus@FGGfirm.com

Jacqueline Greene (0092733)
FRIEDMAN, GILBERT + GERHARDSTEIN
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
T: 513-621-9100
F: 216-621-0427
jacqueline@FGGfirm.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Sarah Gelsomino*
Sarah Gelsomino
*One of the Attorneys for Plaintiff*
