**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JIM T. GLOVER, JR. | ) | CASE NO.: 1:18-CV-01134 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE WILLIAM H. |
| vs. | ) | BAUGHMAN, JR. |
| | ) | |
| STEVEN BOARDMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

---

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Defendants Steven Boardman and Philip Irion, Jr. move this Court for summary judgment as to Plaintiff's claims. Plaintiff cannot establish that Defendants used excessive force under the Fourth Amendment. Therefore, Plaintiff's § 1983 claims against the County fail as a matter of law and should be dismissed.

Respectfully submitted,

MICHAEL C. O'MALLEY, Prosecuting Attorney
of Cuyahoga County, Ohio

By: /s/ *Jake A. Elliott*
Jake A. Elliott (0093521)
jelliott@prosecutor.cuyahogacounty.us
(216) 443-5756
CUYAHOGA COUNTY PROSECUTOR'S OFFICE
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, OH 44113

*Attorneys for Cuyahoga County*

## STATEMENT OF FACTS

**I.    Plaintiff is placed on full suicide precautions after he unnecessarily escalates his traffic stop.**

On December 26, 2017, Plaintiff was housed as an inmate in the Cuyahoga County Corrections Center ("Jail"). Due to actions the previous morning, Plaintiff was in disciplinary segregation on the tenth floor of the Jail's "Jail I" (Christopher Decl., Ex. A).

### A.  Glover is reclassified to the Jail's mental health unit on the seventh floor after reporting he is suicidal.

At approximately 6:00 a.m. on the morning of December 26, 2017, Glover was placed on full suicide precautions after informing corrections officers that he was suicidal. (Christopher Decl., Ex. A; See also Boardman Decl., Ex. E).

Plaintiff was immediately placed on full suicide precautions and reclassified to the Jail's mental health unit on the seventh floor. (Christopher Decl., Ex. A). Because he was on full suicide precautions, Glover was not clothed, (Boardman Decl., ¶ 13. Additionally, the mat to Glover's room was also removed shortly after he arrived on the seventh floor. (Boardman Decl., Ex. E.).

### B.  Boardman, Irion, and Officer Mark Christie serve breakfast to cells 1 through 7.

At approximately 6:30 a.m., Officer Mark Christie and Defendant Irion began distributing breakfast to the inmates in Pod 7C. (Boardman Decl. at ¶11, Ex. E; Irion Decl. at ¶ 10, 11.). Christie was the Officer in charge of Pod 7C, (Boardman Decl., Ex. E); Irion was the Officer in charge of the adjacent pod, Pod 7D (Irion Decl. at ¶ 6).

Because of the status of certain inmates in Pod 7C, Boardman—the Corporal in charge of the seventh floor—was also present. (Boardman Decl. at ¶ 11).

The officers and Boardman served Pods 1 through 6 before arriving at Glover's cell, cell number 7. Irion opened the cell door, and Christie served breakfast trays to each inmate while Boardman supervised.

### C. A recalcitrant Glover is sprayed with pepper foam after refusing orders.

When Irion opened the door to Glover's cell at approximately 6:50, Glover became upset with the contents of his breakfast tray. (Boardman Decl. at ¶ 15). Boardman then ordered Glover back into his cell, and Glover refused. (Boardman Decl. at ¶ 17). Instead, Glover moved away from his cell and aggressively towards Officer Christie. (Boardman Decl. at ¶ 18; Irion Decl. at ¶ 15). In response to Glover's defiance and aggression, Boardman deployed oleoresin capsicum spray ("pepper foam") to Glover's face. (Boardman Decl. at ¶ 18; Irion Decl. at ¶15). Officer Christie activated his portable alarm transmitter at 6:50 a.m. to signal an emergency. (Boardman Decl., Ex. B).

The parties agree that Glover then retreated to his cell, turning his face away from the spray. As a result, the pepper foam hit Glover's bare torso and back. (Boardman Decl. at ¶ 19; see also, generally, Kossman Decl., Ex. A ("Body Cam Footage")). According to Boardman, Glover dove to the back of his cell and curled into the fetal position. (Boardman Decl. at ¶ 21). Boardman followed Glover in to handcuff and extract him; Irion did not enter the cell. (Irion Decl. at ¶ 22).

### D. Glover is extracted, placed in a restraint chair, and taken to the sixth floor for decontamination.

Boardman then handcuffed Glover, stood him up and backed him out of the cell. (Boardman Decl. at ¶ 21). With Glover secure, Boardman felt that the situation was safe enough to activate his body camera. (See Boardman Decl. ¶22) ("After Glover retreated to his cell, and as soon as was practical for my safety and the safety of the other officers given the suddenness of Glover's actions, I activated my body camera."). Body Camera footage begins with Glover handcuffed and being ordered to back out of the cell. (Body Cam Footage, 0:00 – 0:20). Glover can be heard apologizing for his behavior. *Id.*

The video goes on to show officers strapping Glover into the restraint chair without further incident. Though initially indignant, Glover is heard apologizing throughout the approximately twelve-and-a-half minute video. Importantly, at no point does Glover claim that he was sprayed in the anus or testicles with pepper foam, even at his most indignant. Nor does he claim that Boardman or Irion stomped or kicked him, as his complaint alleges. In fact, despite alleging facing "excruciating pain," (Compl. ¶ 26), Glover even suggests that he does not need to be decontaminated. (Body Cam Footage, 2:10 – 2:20).

The video shows Glover being taken to decontamination and then to the medical unit where he is evaluated before being placed in isolation back on the seventh floor.

## E. The County investigates Glover's grievance and determines his allegations are unfounded.

On March 13, 2018, Investigating Sergeant Philip Christopher received Glover's hand-written Grievance. In the grievance, Glover claimed that Boardman and Irion physically assaulted him on the morning of December 26, 2017, and also that they sexually assaulted him by intentionally spraying pepper foam directly on his anus and testicles.

In addition to reviewing medical records from December 26, 2017, and the reports from the incident, Christopher interviewed Glover on May 7, 2018 regarding the incident.

During the interview, Glover admits that he effectively manipulated the Jail's policy regarding suicidal inmates to be reclassified from his prior pod on the 10th floor to the mental health unit via a "suicide watch play." (See Kossman Decl., Ex. B ("Glover Interview"), 2:50 – 3:20, 6:50 – 7:00). He further admits that he had deceptively utilized this method before to be reclassified away from his floor.

Glover also claimed in the video that chow trays were served to the other cells so that he would be served last (Glover Interview, 3:50 – 4:05)—which is inconsistent with Officer Christie's logbook entries from that morning. (See Boardman Decl., Ex. E; see also Irion Decl., Ex. A.; Christopher Decl., Ex. A). The logbook shows that officers resumed serving breakfast after Glover was taken off the pod. Furthermore, though Glover states in the video that Boardman orchestrated a premeditated attack on him, (Christopher Decl., Ex. E). he also admits that he had had no prior

interactions with Boardman before that morning. (See Glover Interview, 9:50 – 10:00).

Based on his review of the reports, medical records, available video footage, and his interview with Glover, Christopher found that Glover's claims were unfounded and that pepper foam had likely run down his back, eventually contaminating his genital area. (Christopher Decl., Ex. E).

**F. Glover's Complaint**

Glover filed his Complaint on May 16, 2018, alleging claims against Boardman, Irion, and a host of other jail employees and medical staff. The Court dismissed the bulk of these claims but permitted the claims against Boardman and Irion to proceed. On January 29, 2021, Glover's filed the operative First Amended Complaint. The First Amended Complaint alleges Section 1983 excessive force claims against Boardman and Irion, as well as a *Monell* claim against Defendant Cuyahoga County. For the following reasons, and the reasons set forth in the County's companion motion for summary judgment, all of Glover's claims fail.

## LAW AND ARGUMENT

### I.  Boardman and Irion are entitled to summary judgment on Glover's excessive force claim.

There is no genuine issue of material fact and Glover's claims against Boardman and Irion fail as a matter of law. There is no evidence that Glover's version of events is anything but a fabrication. Moreover, Boardman's use of force was not objectively unreasonably considering Glover's aggression towards another corrections officer. Administration of O.C. Spray has been repeatedly shown in the Sixth Circuit

to be an appropriate response to disruptive, unruly, and threatening inmates. Therefore, Glover's claims against Defendants Boardman and Irion should be dismissed.

### A. Summary Judgment Standard

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A court must grant summary judgment where there remain no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. *Burchett v. Kiefer*, 310 F.3d 937, 941 (6th Cir. 2002); *Hopson v. Daimler Chrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002). Where it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-moving party, summary judgment is appropriate. *Id*.

While the burden is on the moving party to show that no genuine issue of material fact exists, "that burden may be discharged by 'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F. 3d 810, (quoting *Celotex Corp.*, 477 U.S. at 325). The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or

denials of the adverse party's pleading, but… must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

**B. There is no evidence of Glover's already improbable assault claims.**

Glover claims in his complaint that he was physically assaulted by both Boardman and Irion in his cell after Boardman sprayed him with pepper foam. (Compl. at ¶ 22). He further alleges that an unknown officer sexually assaulted him with pepper foam by spraying foam directly on his anus and testicles. (Compl. at ¶¶ 20-26). Glover cannot produce any evidence that his version of events is true.

First, there is no evidence, credible or otherwise, that Irion was involved in the incident beyond opening Glover's cell door to serve him breakfast. The only video footage of the incident shows Glover being removed from the cell by Boardman (via Boardman's body camera) (Body Cam Footage, 0:00 – 0:20). And Boardman admits that it was he who administered pepper foam to Glover's face and torso. (Boardman Decl. ¶¶ 18-20). There is no footage or other indication that Irion was ever in the cell, where Glover claims the assault took place. Second, pod officers are not permitted to use pepper foam and do not keep it on their person. (Irion Decl. at ¶¶ 20, 21).

Second, Glover does not mention at any point that he was sexually assaulted during the available body cam video. Instead, he consistently apologizes to corrections staff for his behavior, first to Boardman, then to other officers. Even when he is most indignant—claiming that he did not resist and that the attack was premeditated by Boardman, whom he had never seen—he never once claims that Boardman or Irion stomped and kicked him or intentional sprayed his genitals with pepper foam.

**C. The force used to subdue Glover was objectively reasonable under the circumstances.**

Glover cannot establish Boardman's use of pepper spray was unreasonable. Testimony from the Defendants and available video evidence support a finding that the force used by Boardman was objectively reasonable in light of Glover's refusal to comply with Boardman's direct order and his attempted attack on Officer Christie. Accordingly, there is not genuine issue of material fact and Defendants are entitled to judgment as a matter of law on Glover's Section 1983 claims.

To establish a § 1983 claim for excessive force under the Fourth Amendment, the U.S. Supreme Court has "adopt[ed] a bright line rule that 'a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.'" *Morabito v. Holmes*, 628 F. App'x 353, 357 (6th Cir. 2015) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). The "objective reasonableness" test established under the Fourth Amendment in *Graham v. Connor*, 490 U.S. 386 (1989), provides the framework for analyzing allegations that corrections officers used excessive force against a pretrial detainee. *See Kingsley*, 576 U.S. at 397; *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015).

In *Kingsley*, the U.S. Supreme Court acknowledged that the Fourth Amendment's "objective reasonableness" standard is incapable of mechanical application when scrutinizing a corrections officer's use of force against a pre-trial detainee. *See Kingsley*, 576 U.S. at 397; *see also Graham*, 490 U.S. at 395. This is because "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396

8

(citations and quotations omitted). Rather, reviewing courts must consider the "totality of the circumstances" surrounding the use of force "in light of the facts and circumstances of each particular case." *Id.* (citing *Graham*, 490 U.S. at 397). Courts must be cognizant of the rate at which events unfold, and the "calculus of reasonableness must embody allowances for the fact that [law enforcement] officers are forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-397.

In determining the reasonableness of an officer's actions, the Court must therefore consider the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. *Kingsley* set forth the following, non-exhaustive considerations that bear on the reasonableness of the force used:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; [6] and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397 (2015) (citing *Graham*, 490 U.S. at 396). "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.' *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

9

Where officers are forced to make quick decisions in response to an unruly detainee, the Sixth Circuit is reluctant to find that their actions were objectively unreasonable. And in a corrections setting, chemical irritants "can be constitutionally used in small quantities to 'prevent riots and escapes' or to control a 'recalcitrant inmate.'" *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (quoting *Landman v. Peyton*, 370 F.2d 135, 138 & n.2 (4th Cir. 1966)). In fact, chemical irritants are used because they "may be 'much more humane and effective than a flesh to flesh confrontation with an inmate.'" *Id.* (quoting *Soto v. Dickey*, 744 F.2d 1260, 1262 (7th Cir. 1984)).

Here, Glover refused a direct order from Corporal Boardman to return to his cell. (Boardman Decl. at ¶ 17). After Glover refused and moved aggressively towards Officer Christie, Boardman had to act quickly. He deployed his pepper foam to gain compliance from a recalcitrant Glover, and to protect himself, Irion, and Officer Christie. (Boardman Decl. at ¶ 18). There is no evidence that any additional force was used to gain Glover's compliance and secure the situation.

Finally, Glover can point to no document to support that he suffered any injuries, which also tends to show that the force was not excessive. As noted by Sergeant Christopher in his report, there is no sign of injury to Glover's head or back in the body cam video of the incident. (Christopher Decl., Ex. A). Nor does Glover claim he was injured or mention any sort of physical or sexual assault in over 12 minutes of body camera footage recorded after the incident.

Applying the *Kingsley* factors, Corporal Boardman's use of force was not excessive. There was a need, under the circumstances, for Boardman to use force to

regain control of a potentially dangerous situation. Glover had refused a direct order and posed a significant threat to Boardman and the officers. Under these circumstances, an officer in Boardman's position would reasonably perceive Glover as a threat. Furthermore, the use of pepper spray was appropriate considering Glover's defiant and aggressive behavior. Glover cannot show that he suffered injuries, which tends to show that the force used was not excessive (Christopher Decl., Ex. A). The balance of the Kingsley factors all favor Defendants. For these reasons, the force used against Glover was objectively reasonable. Glover cannot establish a constitutional deprivation and the claims against Boardman and Irion should be dismissed.

## II.     Boardman and Irion are entitled to qualified immunity.

To defeat qualified immunity, the alleged constitutional right must be "so clearly established at the time in question that a reasonable person in the defendant's position would have known that he was violating the plaintiffs' constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 745 (6th Cir. 2006). While case law does not require a case directly on point, "existing precedent must have placed the statutory or constitution question *beyond debate*." *White v. Pauly*, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015)).

Moreover, the constitutional right claimed cannot be set at an "abstract level of generality" but must be known in a more particularized sense: "The contours of the right" must be "sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640,

11

107 S. Ct. 3034 (1987). While it is unnecessary for the very action in question to have been held unlawful, the unlawfulness of the official's action must nevertheless have been apparent considering the pre-existing law.  *Id*. at 640. "In other words, immunity protects all but the plainly incompetent or those who knowingly violated the law." *Pauly*, 137 S. Ct. at 551 (internal quotations omitted).

The individual defendants are entitled to qualified immunity because no reasonable officer would have believed that their conduct violated Glover's rights. There is a significant body of case law holding that corrections officers may use force, including chemical irritants, where an inmate refuses to obey orders or poses an immediate threat to the safety of officers. *See, e.g.*, *Siggers v. Renner*, 37 F. App'x138 (6th Cir. 2002) (holding use of pepper spray not excessive where necessary to obtain compliance with orders); *Young v. Jourden*, No. 1:19-cv-854, 2021 U.S. Dist. LEXIS 35121 (W.D. Mich. 2021) (holding officer's use of pepper spray against inmate refusing to return to his cell objectively reasonable). *Walker v. Chambers-Smith*, No. 1:19cv750, 2020 U.S. Dist. LEXIS 38244, at *16 (N.D. Ohio Mar. 5, 2020) ("[t]he Sixth Circuit has held that the use of mace to restore order after an inmate fails to obey an order does not violate that inmate's Eighth Amendment rights.") (citing *Jennings v. Mitchell*, 93 F. App'x. 723, 725 (6th Cir. 2004); *Thomas v. Greene*, No. 99-3179, 1999 U.S. App. LEXIS 34054, 1999 WL 1253102, at *2 (6th Cir. 1999)).

Where, as here, an inmate has refused a direct order, and in fact acts in defiance of that order, no reasonable officer would have seen the deployment of pepper spray to gain compliance as a violation of Plaintiff's rights.

## CONCLUSION

For the foregoing reasons, Defendant Cuyahoga County is entitled to summary judgment and the remaining claims against the Doe Defendants should be dismissed.

Respectfully submitted,

MICHAEL C. O'MALLEY, Prosecuting Attorney
of Cuyahoga County, Ohio

By: /s/ *Jake A. Elliott*
Jake A. Elliott (0093521)
jelliott@prosecutor.cuyahogacounty.us
(216) 443-5756
CUYAHOGA COUNTY PROSECUTOR'S OFFICE
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, OH 44113

*Attorneys for Cuyahoga County*

## **CERTIFICATION OF COMPLIANCE WITH L.R. 7.1(f)**

This memorandum, excluding this certificate and the signature block, is less than twenty (20) pages long and complies with L.R. 7.1(f).

/s/Jake A. Elliott
Jake A. Elliott (0093521)