IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JIM T. GLOVER, JR., | ) CASE NO. 1:18-CV-01134-DCN |
| Plaintiff, | ) JUDGE DONALD C. NUGENT<br>) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| CORPORAL BOARDMAN, et al., | ) MAGISTRATE JUDGE<br>) JENNIFER DOWDELL<br>) ARMSTRONG |
| Defendants. | ) **REVISED REPORT AND<br>RECOMMENDATION** |

**I.      INTRODUCTION**

Now pending is Defendant Cuyahoga County's (the "County") Corrected Motion for Summary Judgment (ECF Doc. No. 65-1), which the County filed on November 1, 2022. This Revised Report and Recommendation is intended to revise and/or substitute my prior Report and Recommendation (ECF Doc. No. 64) to the extent that the prior Report and Recommendation addressed the County's inadvertently filed Motion for Summary Judgment (ECF Doc. No. 53).

By way of background, Defendants Steven Boardman ("Boardman") and Philip Irion, Jr. ("Irion") filed a Motion for Summary Judgment (ECF Doc. No. 52) on Plaintiff Jim T. Glover's ("Glover") Amended Complaint (ECF Doc. No. 36) on February 17, 2022. That same day, the County filed a Motion for Summary Judgment (ECF Doc. No. 53), which was a verbatim copy of Boardman and Irion's Motion. I issued a Report and Recommendation on those Motions on November 1, 2022. (ECF Doc. No. 64). Later that day, counsel for the County filed a Motion for Leave to Correct Filing Error, asserting that he inadvertently filed a copy of Boardman and Irion's Motion for Summary Judgment (ECF Doc. No. 52) as the County's Motion for Summary Judgment. (ECF Doc. No. 65, PageID # 463). The County's counsel, therefore, requested leave to

1

file a Corrected Motion for Summary Judgment, instanter, and indicated that the Corrected Motion was the motion he originally intended to file. (*Id.*; ECF Doc. No. and 65-1).

U.S. District Court Judge Donald C. Nugent granted the County's Motion for Leave to Correct Filing Error on November 7, 2022. (*See* ECF marginal entry order dated 11/07/2022). On November 15, 2022, Judge Nugent issued an Order of Referral, referring this case to me "for supervision of the remaining briefing on [the County's] Corrected Motion for Summary Judgment (ECF # 65), and for a revised Report and Recommendation incorporating all issued raised in the Corrected Motion." (ECF Doc. No. 67). I then ordered Glover to respond to the County's Corrected Motion for Summary Judgment by December 5, 2022. (*See* non-document entry dated 11/22/2022). Glover has not filed a response, and the County's Corrected Motion for Summary Judgment is now ripe for review.

For the reasons set forth below, I RECOMMEND that the Court GRANT the County's Corrected Motion for Summary Judgment (ECF Doc. No. 65-1), and STRIKE the County's inadvertently filed Motion for Summary Judgment (ECF Doc. No. 53) from the record.

**II.  RELEVANT PROCEDURAL HISTORY**

Glover was a detainee at the Cuyahoga County Corrections Center (the "CCCC") at all relevant times. (*See* ECF Doc. No. 36, PageID # 164). On January 29, 2021, Glover filed an Amended Complaint, asserting: (1) a 42 U.S.C. § 1983 excessive force claim against Boardman and Irion, who are corrections officers at the CCCC; and (2) a 42 U.S.C. § 1983 *Monell* claim against the County. (ECF Doc. No. 36, PageID # 171-74). As previously noted, Boardman, Irion, and the County moved for summary judgment on Glover's claims on February 17, 2022. (ECF Doc. Nos. 52, 53). Glover filed a Brief in Opposition, and Boardman, Irion, and the County (collectively, "Defendants") filed a combined Reply in Support of their Motions for Summary Judgment. (ECF Doc Nos. 57, 58). Then-Magistrate Judge William H. Baughman, Jr. held oral

2

arguments on Defendants' Motions for Summary Judgment on July 12, 2022. (ECF Doc. No. 63).

Consistent with my Report and Recommendation (ECF Doc. No. 64), Judge Nugent denied Boardman's and Irion's Motion for Summary Judgment on December 7, 2022. (ECF Doc. No. 68). In doing so, Judge Nugent acknowledged that the County had filed a Corrected Motion for Summary Judgment, and he indicated that he would defer any ruling on that Motion until I issued a new Report and Recommendation after the parties completed additional briefing. (ECF Doc. No. 68, PageID # 475 n.1). As previously noted, despite being given time to do so, Glover did not respond to the County's Corrected Motion for Summary Judgment. (*See* ECF non-document entry dated 11/22/2022).

### III. BACKGROUND

#### A. Glover's Amended Complaint

In his Amended Complaint, Glover alleged that, on December 26, 2017, Boardman and Irion "brutally beat, deployed oleoresin capsicum (OC) spray against, and severely injured [him] while he was at the [CCCC]." (ECF Doc. No. 36, PageID # 162). Glover asserted that Boardman and Irion actions were unprovoked and constituted excessive force in violation of his Fourth and Fourteenth Amendment rights. (*Id.* at PageID # 162, 171). Glover also asserted that the County was liable because it had "unconstitutional policies, practices, and customs in place at the time . . . [that were] the moving force behind the misconduct committed by . . . Boardman and Irion." (*Id.* at PageID # 162, 172).

Glover set forth the following factual allegations in his Amended Complaint in support of his claims. Glover was being held as a pretrial detainee at the CCCC. (*Id.* at PageID # 164). Glover expressed suicidal ideation and was being held naked in Pod 7C, which is a special cell for inmates/detainees who have expressed suicidal ideation. (*Id.*). At approximately 6:30 a.m. on December 26, 2017, Boardman and Irion were serving breakfast to the inmates/detainees in Pod

3

7C. (*Id.*). At the time, the CCCC had a policy of serving different, less nutritional meals to inmates/detainees who were in segregation as a punitive measure. (*Id.* at PageID # 165). The corrections officers served Glover a "punitive breakfast tray" despite Glover being on "suicide watch[,]" rather than being segregated as a punitive measure. (*Id.*). Glover accepted the "punitive breakfast tray[,]" but he told Boardman that he should have received a normal meal. (*Id.*).

Boardman then entered Glover's cell and sprayed Glover's face with "OC spray" ("pepper spray"). (*Id.*). Glover fled to the back of his cell, but Boardman and Irion followed him and "began to brutalize him, kicking his head and back" while Boardman continued spraying pepper spray on the back of Glover's neck. (*Id.*). Glover then "felt a hand spread his butt cheeks apart [and] . . . felt the excruciating pain of [pepper] spray being sprayed directly onto his anus and testicles." (*Id.*)

At that point, additional correctional officers arrived at Glover's cell. (*Id.* at PageID # 166). Corrections officer then handcuffed Glover, strapped him into an emergency restraint chair, and "decontaminated [him] from the [pepper] spray . . . ." (*Id.*). Glover alleged that, as a result of this incident, he has suffered mental, emotional, and physical pain and suffering. (*Id.*).

**B.     The County's Corrected Motion for Summary Judgment**

In its Corrected Motion for Summary Judgment, the County argues that it is entitled to judgment as a matter of law on Glover's *Monell* claim because Glover "cannot establish a constitutional deprivation or that such deprivation was caused by a County custom, policy, or practice." (ECF Doc. No. 65-1, PageID # 465). The County's Corrected Motion for Summary Judgment incorporates by reference the facts set forth in Boardman and Irion's Motion for Summary Judgment (ECF Doc. No. 52), which I will summarize below. (ECF Doc. No. 65-1, PageID # 466).

**1.     *Defendants' Version of the Events***

On December 25, 2017, Defendants allege that Glover displayed "disrespectful" conduct

4

toward a nurse when the nurse did not give Glover medication that Glover was not prescribed to receive. (*See* ECF Doc. No. 52-1, PageID # 322-23). As a result of this "minor rule violation[,]" Glover was placed in disciplinary segregation on the tenth floor of the CCCC. (ECF Doc. No. 52, PageID # 286; ECF Doc No. 52-1, PageID # 323).

Around 5:48 a.m. on December 26, 2017, Glover told a corrections officer that he was suicidal. (ECF Doc. No. 52, PageID # 286; ECF Doc. No. 52-1, PageID # 325). As a result, corrections officers transferred Glover from the tenth floor to the mental health unit on the seventh floor, and placed Glover on full suicide precautions. (*Id.*). Because he was on full suicide precautions, Glover was unclothed. (ECF Doc. No. 52, PageID # 286; ECF Doc. No. 52-2, PageID # 347).

Around 6:30 a.m., Officer Mark Christie ("Christie"), Irion, and Boardman began distributing breakfast trays to the detainees/inmates in Pod 7C. (ECF Doc No. 52, PageID # 286). Irion opened the cell doors, Christie served the trays, and Boardman supervised. (*Id.* at PageID # 287). When Irion opened Glover's cell door at approximately 6:50 a.m., Glover became upset at the contents of the tray. (*Id.*). Boardman ordered Glover back into his cell, but Glover refused and moved "aggressively" toward Christie. (*Id.*; ECF Doc. No. 52-2, PageID # 352). In response, Boardman sprayed Glover in the face with pepper spray while Christie activated his portable alarm transmitter ("PAT") to signal an emergency. (*Id.*).

Glover then turned his face away from the pepper spray and retreated to the back of his cell, which resulted in Boardman spraying Glover's bare torso and back with pepper spray. (ECF Doc No. 52, PageID # 287). Boardman then handcuffed Glover and removed Glover from his cell. (*Id.*). Irion did not enter Glover's cell. (*Id.*). Boardman activated his body camera as soon as he felt it was safe to do so; the footage begins with Boardman leading a handcuffed Glover backward out of his cell. (*Id.* at PageID # 288). The corrections officers transported Glover to the medical

5

dispensary for evaluation and then placed Glover back in isolation of the seventh floor. (*Id.*). Glover later filed a written grievance against Boardman and Irion regarding the December 26, 2017, incident. (*See* ECF Doc. No. 52-1, PageID # 304).

### 2. Body Camera Footage

Boardman and Irion supported their Motion for Summary Judgement with body camera footage from: (1) December 26, 2017, showing corrections officers removing Glover from his cell, decontaminating him (*i.e.*, briefly rinsing Glover off with water), taking Glover to the medical dispensary, and then returning Glover to a cell; and (2) May 7, 2018, showing Glover's interview with Investigative Sergeant Philp Christopher ("Christopher") regarding Glover's grievance against Boardman and Irion related to the December 26, 2017, incident. (*See* ECF Doc. No 52-4, Exhibits A and B).

#### i. Body Camera Footage: December 26, 2017

As previously noted, the body camera footage from December 26, 2017, begins as Boardman is leading a handcuffed Glover backward out of his cell after Boardman pepper sprayed Glover. (ECF Doc. No 52-4, Exhibit A). The footage captures Glover: (1) saying "I'm sorry" multiple times; (2) asserting that he "never resisted[;]" (3) claiming that "he" opened his cell door, handed him a tray, and then immediately pepper spayed him; (4) claiming that this was a "hit" and that "he" was "kicking me in my ass[;]" (5) saying he does not want the pepper spray washed off; (6) asserting the he "didn't do shit" and "he attacked me[;]" (7) claiming that he was using the mental health unit to get away from a "problem" on the tenth floor; (8) apologizing for "talking shit earlier[;]" (9) saying "please don't kill me" as the corrections officers take him to be decontaminated from the pepper spray; (10) yelling in pain as a corrections officer briefly (*i.e.*, for about fifteen seconds) rinses Glover's shoulders, eyes, and back with water; (11) saying "I'm a bitch, man; I'm not tough" after the corrections officer finishes rinsing Glover off with water; (12)

while waiting for a restraints check, apologizing to the nursing staff for being an "asshole[;]" and (13) continuing to apologize as the corrections officers take Glover back to a cell, and asking that they "don't take it out on" him. (*Id.*). At no point in the footage does Glover claim that anyone – as he alleged in his Amended Complaint – "spread his butt cheeks apart" and pepper sprayed him "directly onto his anus and testicles." (ECF Doc. No. 36, PageID # 165).

### ii. Body Camera Footage: May 7, 2018

The body camera footage from May 7, 2018, shows Glover's interview with Christopher regarding Glover's allegations against Boardman and Irion related to the December 26, 2017, incident. (ECF Doc. No 52-4, Exhibit B; ECF Doc. No. 52-1, PageID # 300). The footage captures Glover: (1) admitting that he used "suicide watch" to avoid getting "jumped" on the tenth floor; (2) stating that Boardman, Irion, and Christie handed him the wrong meal, so he asked for the correct meal in a non-aggressive manner; (3) claiming that, as soon as Glover reached for the tray, Boardman already had his pepper spray out and sprayed Glover on the side of the face, so Glover ran to the back of his cell and crouched down to protect his face; (4) claiming that Boardman and Irion followed him into his cell, "kicked and stumped" him on the back of his head twelve to fourteen times, and someone – presumably Boardman since Glover only saw Boardman with pepper spray – "grabbed his cheeks" and pepper sprayed Glover's anus and testicles; (5) stating that he had never seen Boardman prior to the December 26, 2017, incident and did not know why Boardman attacked him; (6) claiming that the corrections officers planned to attack him because they strategically served him a breakfast tray last to avoid getting pepper spray on the other trays; and (7) asserting that he feels like he was sexually assaulted with pepper spray. (ECF Doc. No 52-4, Exhibit B).

### 3. Declarations

In addition to the body camera footage, Boardman and Irion supported their Motion for

7

Summary Judgement with declarations from: (1) Christopher (ECF Doc. No. 52-1, PageID # 300); (2) Boardman (ECF Doc. No. 52-2, PageID # 345); (3) Irion (ECF Doc. No. 52-3, PageID # 362); and (4) Security Systems Analyst Jason Kossman ("Kossman") (ECF Doc. No. 52-4, PageID # 368). I will briefly address each declaration and related attachments in turn.

### i. *Christopher's Declaration*

Christopher declared that he investigated Glover's grievance regarding the December 26, 2017, incident. (ECF Doc. No. 52, PageID # 300). Christopher declared that he reviewed Glover's written grievance, the reports from the corrections officers, certain jail medical records, and the available video footage. (*Id.* at PageID # 301). He also declared that he interviewed Glover regarding Glover's grievance on May 7, 2018, and that he completed a report on May 10, 2018, finding that Glover's allegations were unfounded. (*Id.*). In support of his declaration, Christopher attached his report and a submission from the warden's office notifying Glover of the report, as well as the records that Christopher relied upon in making his report. (*Id.* at PageID # 303-44).

In his report, Christopher noted that: (1) video surveillance recordings of the incident were unavailable because they were outside of the 30-day retention policy; (2) the body camera footage showed pepper spray on Glover's neck and back, and running down to Glover's buttocks, which was consistent with Glover's statement that Glover turned and ran toward the back of his cell to avoid being pepper sprayed in the face; (3) while in the emergency restraint chair immediately after the incident, Glover did not state that he had been kicked in the back of the head, or that he was sexually assaulted with pepper spray; (4) Glover had no visible injuries to the back of his head; (5) while waiting to be examined in the medical dispensary, Glover apologized to the staff for his past behavior; (6) Glover never told a medical professional that he had been repeatedly kicked in the head or sexually assaulted at any time after the incident; (7) Glover's assertion that the corrections officers planned to attack him because they strategically served him breakfast last

to avoid getting pepper spray on the other trays was unfounded because the log book reflects that corrections officers continued to serve breakfast after the incident; and (8) Glover's assertion that the corrections officers served him the wrong breakfast tray is inconsistent with the log book, and "appears to be Glover's attempt to justify and orchestrate a premeditated retaliatory attack against . . . Boardman." (*Id.* at PageID # 305-307).

### ii. *Boardman's Declaration*

Boardman declared that he, Irion, and Christie distributed breakfast in Pod 7C at approximately 6:30 a.m. on December 26, 2017. (ECF Doc. No. 52-2, PageID # 346). Boardman declared that Irion opened Glover's cell, and that Christie stepped toward Glover to hand Glover a breakfast tray. (*Id.* at PageID # 347). Boardman declared that Glover became "animated" and "aggressive" because Glover was upset at the contents of the tray, despite the fact that Glover's tray was no different than the other breakfast trays being served that day. (*Id.*). Boardman declared that he ordered Glover to "back away into his cell[,]" that Glover refused to comply, and that Glover moved aggressively toward Christie. (*Id.*). As a result, Boardman declared that he pepper sprayed Glover's face while Christie activated his PAT. (*Id.*). Boardman declared that, because Glover turned and retreated to the back of his cell, the pepper spray also ended up on Glover's bare torso and down Glover's back. (*Id.*). Boardman declared that he then handcuffed Glover and walked him backward out of his cell, where Glover was placed in emergency restraints and transported for decontamination. (*Id.*). Boardman declared that he never intentionally deployed pepper spray on Glover's anus or testicles, and that he never kicked, stomped or otherwise physically attacked Glover in any way. (*Id.* at PageID # 347-48).

In support of his declaration, Boardman attached his incident report from December 26, 2017, as well as the incident reports of Christie, Irion, and Craig Harris (a corrections officer who helped secure Glover into the restraint chair), which corroborated Boardman's version of the

events. (*Id.* at PageID # 350-57). Boardman also attached a copy of the pod activity log book for Pod 7C from December 26, 2017. (*Id.* at PageID # 358-61).

### iii. Irion's Declaration

Irion declared that he opened the door to Glover's cell, and that Christie stepped forward to hand Glover a breakfast tray. (ECF Doc. No. 52-3, PageID # 363). Like Boardman, Irion declared that Glover became upset, moved aggressively toward Christie, and that Boardman pepper sprayed Glover in the face while Christie activated his PAT. (*Id.* at PageID # 363-64). Irion declared that he never entered Glover's cell, that he was not authorized to – and did not – carry pepper spray, and that he never kicked, stomped, or otherwise physically attacked Glover. (*Id.* at PageID # 364). In support of his declaration, Irion attached his incident report from December 26, 2017. (*Id.* at PageID # 366-67).

### iv. Kossman's Declaration

Kossman declared that he maintains the records for incidents occurring at the CCCC, that the body camera videos from December 26, 2017, and May 7, 2018, are true and accurate copies, and that they are kept in the ordinary course of business. (ECF Doc. No. 52-4, PageID # 368-70).

### 4. The County's Arguments

In its Corrected Motion for Summary Judgment, the County argues that: (1) Glover cannot establish an excessive force claim against Boardman and Irion; (2) the County did not fail to train or supervise its officers; (3) the County does not have a custom, policy, or practice of acquiescence to the use of excessive force; and (4) Glover cannot establish a tolerance or acquiescence of federal rights violations via the ratification theory of *Monell* liability. (ECF Doc. No. 65-1, PageID # 468-471). After the County filed its Corrected Motion for Summary Judgment, Judge Nugent – consistent with my Report and Recommendation (ECF Doc. No. 64) – denied Boardman and Irion's Motion for Summary Judgment related to Glover's excessive force claim. (ECF Doc. No.

10

68). Accordingly, I will not address the County's argument in that regard.

Regarding the County's argument that it did not fail to train its officers, the County points to Boardman's and Irion's declarations, wherein they described their specialized training (including their use of force and pepper spray training), and their years of on-the-job training. (ECF Doc. No. 65-1, PageID # 469). Replying on this evidence, the County asserts that Glover cannot point to any inadequacy in the County's training program that was the moving force behind his alleged injury. (*Id.*).

Regarding the County's argument that it does not have a custom, policy, or practice of acquiescence to the use of excessive force, the County argues that Glover's claim in this regard is without foundation and based upon inadmissible hearsay. (*Id.* at PageID # 469-470). The County also argues that "Glover cannot show that there was a clear and persistent pattern of illegal activity that led to his injuries, or that the County was on notice of and tacitly approved any conduct." (*Id.* at PageID # 470). The County further argues that Glover cannot solely rely on the allegations contained in his Amended Complaint to establish a genuine issue of material fact in this regard. (*Id.*).

Lastly, regarding its argument that Glover cannot establish a tolerance or acquiescence of federal rights violations via the ratification theory of *Monell* liability, the County points to Christopher's declaration, wherein Christopher explained the extent to which he investigated Glover's claims. (*Id.* at PageID # 470-71). The County argues that, while Glover may disagree with the result of the investigation into his claim, he cannot claim that the incident went without investigation. (*Id.* at PageID # 471).

### 5. *Glover's Brief in Opposition*

As previously noted, Glover did not respond the County's Corrected Motion for Summary Judgment. Glover did, however, oppose Defendants' Motions for Summary Judgment on June 30,

11

2022 (*i.e.*, prior to the County filing its Corrected Motion for Summary Judgment). (ECF Doc. No. 57). According to the County, despite its filing error with this Court, it did send Glover the now-Corrected Motion for Summary Judgment when it initially filed its Motions. (ECF Doc. No. 65, PageID # 463). Thus, assuming the County's assertion is accurate, Glover's initial Brief in Opposition (ECF Doc. No. 57) was a response to the County's now-Corrected Motion for Summary Judgment. Regardless of the accuracy of the County's assertion, I will consider the arguments contained in Glover's Brief in Opposition filed on June 30, 2022 (ECF Doc. No. 57), because Glover has not otherwise responded to the County's Corrected Motion for Summary Judgment (ECF Doc. No. 65-1).

In his Brief in Opposition, Glover asserted, in part, that Boardman and Irion "jumped [him], beat [him] with a closed fist, stumped [him] in the back of [his] head, [and] sprayed him with [pepper spray] for no apparent reason . . . ." (ECF Doc. No. 57, PageID # 397). Glover also asserted that Boardman "conve[nie]ntly activated" his body camera after the assault, and that Glover was "apologizing in duress." (*Id.*). Glover also asserted that he was not combative, aggressive, or threatening, but that Boardman and Irion followed him into his cell and "pummel[led him] with their fist and feet to [his] torso and back of [his] head." (*Id.* PageID # 398).

Other assertions in Glover's Brief in Opposition repeat those contained in Glover's Amended Complaint, including that the incident began when Boardman handed Glover a breakfast tray with one hand, and sprayed him with pepper spray with the other hand. (*Id.* PageID # 398; ECF Doc. No. 36, PageID #165). Glover, however, did not assert – like he did in his Amended Complaint – that he "felt a hand spread his butt cheeks apart [and] . . . felt the excruciating pain of [pepper] spray being sprayed directly onto his anus and testicles." (ECF Doc. No 36, PageID # 165).

Glover did not support his Brief in Opposition with any documents or other evidence, but

12

he did "swear by perjury" that the statements in his Brief in Opposition were "true and accurate." (ECF Doc. No. 57, PageID # 397). During the oral arguments on Defendants' Motions for Summary Judgment (ECF Doc. Nos. 52 and 53), then-Magistrate Judge William H. Baughman, Jr. advised Glover that he would accept the statements Glover made in his Brief in Opposition "as part of the Rule 56(c) record" since Glover "swore to them under penalty of perjury[.]" (ECF Doc. No. 63, PageID # 429). I will do the same.

IV. LAW & ANALYSIS

    A. **Summary Judgment Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "In the qualified immunity context, 'this usually means adopting . . . the plaintiff's version of the facts,' . . . unless the plaintiff's version is 'blatantly contradicted by the record, so that no reasonable jury could believe it . . . .'" *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Once the movant presents evidence to meet its burden, the nonmoving party

may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

The Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to designate specific facts or evidence in dispute, and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### B. Glover's *Monell* Claim

In his Amended Complaint, Glover asserted a *Monell* claim against the County, claiming that: (1) Boardman and Irion acted pursuant to one or more interrelated de facto policies, practices, and/or customs of civil rights violations and unconstitutional practices; (2) the County approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of Boardman and Irion; (3) the County failed to effectively investigate or impose any discipline on Boardman or Irion for their illegal behavior; and (4) the County failed to properly hire, train, supervise, transfer, monitor, counsel, or otherwise control its corrections officers. (*See* ECF Doc. No. 36, PageID # 171-74).

### 1. *Monell* Claim

A *Monell* claim is one brought against a municipality or other local governmental entity – not an individual – for a governmental custom, policy, or practice that results in an alleged constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). The Sixth Circuit

has recognized several ways to establish a *Monell* claim. A plaintiff may look to: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; and (4) a custom of tolerance or acquiescence of federal rights violations. *Id.* Additionally, a plaintiff may establish a *Monell* claim by showing that the municipality ratified its employee's constitutional violations by failing to meaningfully investigate and punish allegations of unconstitutional conduct. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989). For a *Monell* claim to be viable, the municipal action or inaction must have been the "moving force" behind the constitutional harm. *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 US. at 694).

    2.  *Analysis*

The County has established that it is entitled to summary judgment on Glover's *Monell* claim. In his Brief in Opposition (ECF Doc. No. 57), Glover offered no argument or evidence establishing that a genuine issue of material fact remains regarding whether the County had a custom, policy, or practice that resulted in his alleged constitutional injuries. *Monell*, 436 U.S. at 690-91. At most, he alleged that the employees at the CCCC have been "assaulting detainees for years[,]" that they work together to "get rid of lawsuits[,]" and that they "make it where [he] cannot retrieve medical records or original complaint form[.]" (ECF Doc. No. 57, PageID # 397).

Aside from these bare assertions, Glover has presented no evidence demonstrating that the County has a custom, policy, or practice that resulted in Glover's alleged constitutional injuries, or that a genuine issue of material fact exists regarding same. *See Celotex*, 477 U.S. at 324; *Daniels v. Tharp*, No. 3:16 CV 2830, 2019 WL 400396, at *3 (N.D. Ohio Jan. 31, 2019), *aff'd*, No. 19-3190, 2020 WL 13561351 (6th Cir. June 22, 2020) (noting that bare assertions will not defeat a motion for summary judgment). To the contrary, Glover's Brief in Opposition undermines his

*Monell* claim by asserting the Boardman and Irion failed to follow the CCCC's own policies and procedures. (*Id.*). Thus, I recommend that the Court grant summary judgment in favor of the County on Glover's *Monell* claim.

## V. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court GRANT the County's Corrected Motion for Summary Judgment (ECF Doc. No. 65-1), and STRIKE the County's inadvertently filed Motion for Summary Judgment (ECF Doc. No. 53) from the record.

Dated: 12/15/2022

/s Jennifer Dowdell Armstrong
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VI. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the

United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).